UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BILLY KAY APPEL,

        Plaintiff,

v.                                                                     Case No. 18-C-1433

ANDREW M. SAUL,
Commissioner of Social Security,

        Defendant.

## DECISION AND ORDER

Plaintiff Billy Appel filed this action for judicial review of a decision by the Commissioner of Social Security denying her applications for a period of disability and disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Appel contends that the administrative law judge's (ALJ) decision is flawed and requires remand for two reasons: (1) the ALJ failed to appropriately consider the findings of the state agency psychological consultant's opinions regarding Appel's mental impairments and (2) the ALJ improperly interpreted evidence in the medical record without the benefit of an expert opinion. For the reasons that follow, the Commissioner's decision will be reversed and remanded.

## BACKGROUND

In April 2014, Appel filed her applications, alleging an onset date of December 20, 2013. R. 47. Appel listed depression, anxiety, mood disorder, tumor in back, idiopathic thrombocytopenic purpura, hypokalemia, hypocalcemia, and memory problems as the conditions that limited her ability to work. R. 412. After her applications were denied initially and on reconsideration, Appel

requested a hearing before an ALJ. On December 6, 2017, ALJ Jeffry Gauthier conducted a video hearing where Appel, who was represented by counsel, and a vocational expert (VE) testified. R. 65–104.

At the time of the hearing, Appel, who is 5'3", was 58 years old and weighed 120 pounds. R. 69–70. Appel testified that she completed high school and that she currently lives with her boyfriend. R. 70, 73. Aside from income from her boyfriend's job, Appel stated that she did not have a source of income and that she receives foodshare and healthcare through Badgercare. R. 71–72.

Regarding her physical impairments, Appel testified that she has back pain and desmoid tumors that are 1 to 2 inches in size located near her spine right about where her shoulder blades start. R. 77–80. Appel had surgery to remove a tumor, as well as part of the surrounding muscle, but stated that another tumor has since grown back in its place and that surgery for that tumor will be considered once it reaches an appropriate size. *Id.* Appel stated she takes hydrocodone for the pain and that it is effective at reducing the pain by about 50%. R. 77, 79. Appel also testified her degenerative vertebrae cause neck spasms that occur six times a day lasting around a minute for which she takes muscle relaxers. R. 81–82. Appel further stated that she takes medication for her osteoporosis—which causes her aches, prevents her from standing straight, and causes her lower back pain—to prevent it from getting worse. R. 82–83. Lastly, Appel testified that she has arthritis in her neck, back, and both hands, and that she has carpal tunnel which inhibits her ability to hold onto things and causes severe pain. R. 83–85. Appel stated she had surgery to treat her carpal tunnel but that it was unsuccessful. R. 84–85.

As a result of her physical conditions, Appel testified she cannot stand or sit for more than 15 to 20 minutes at a time and that she has difficulties lifting anything heavier than a gallon of milk.

2

R. 80. Appel stated that, in general, she experiences more pain as the day continues and that she has more bad days than good. R. 91.

Regarding her mental impairments, Appel testified she has anxiety and depression but that it does not inhibit her ability to work so long as she stays on her medication. R. 86. She also testified that she has short term memory problems that result in her forgetting to fill out forms and where she places things, and that she has difficulties concentrating and focusing when reading. R. 94. Appel stated she experiences some side effects from the medications that she takes; the medications make her tired and light headed for a couple of minutes and she feels nauseous for a few hours. R. 91–93.

Regarding her daily activities, Appel testified that she is able to brush her teeth and take a shower without issue, goes on fifteen-minute walks up and down the street or out with her dog, and watches television and goes on the internet throughout the day. R. 87–88. Appel also stated that she draws and reads three to four times a week. R. 90. Appel has a driver's license but stated that she does not drive after she takes her medication. R. 92.

In an eight-page decision dated February 21, 2018, the ALJ determined that Appel is not disabled. R. 47–54. The ALJ's decision followed the five-step sequential process for determining disability prescribed by the Social Security Administration (SSA). R. 48–49. At step one, the ALJ concluded that Appel has not engaged in substantial gainful activity since her December 20, 2013 alleged onset date and that she met the insured status requirements through December 31, 2018. R. 49. At step two, the ALJ concluded that Appel has the following severe impairments: recurrent desmoid tumor of the back, degenerative disc disease, osteoporosis, and bilateral carpal tunnel syndrome. *Id.* The ALJ held that Appel's medically determinable mental impairments of anxiety

3

and depression were not severe because they did not cause more than minimal limitation in her ability to perform basic mental work activities. R. 50. At step three, the ALJ concluded Appel did not have an impairment or combination of impairments that met or medically equaled the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 50–51.

Next, the ALJ assessed Appel's residual functional capacity (RFC) and found that she can perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b) subject to the following limitations:

> She can never climb ladders, ropes, or scaffolds. She can frequently stoop. The claimant can frequently reach overhead bilaterally and can frequently handle and finger bilaterally. She can never work at unprotected heights or around moving mechanical parts. The claimant cannot have exposure to concentrated amounts of dust, odors, fumes and/or pulmonary irritants.

R. 51. At step four, the ALJ concluded, based on the testimony of the VE, that Appel is capable of performing her past relevant work as a customer service clerk. R. 53. Accordingly, the ALJ found that Appel is not disabled. R. 54. The Appeals Council denied Appel's request for review, making the ALJ's decision the final decision of the Commissioner.

## LEGAL STANDARD

Judicial review of the decisions of administrative agencies is intended to be deferential. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010). The Social Security Act specifies that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The Supreme Court recently reaffirmed that "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Beistek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305

U.S. 197, 229 (1938)). "The phrase 'substantial evidence,'" the Court explained, "is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Id.* "And whatever the meaning of 'substantial' in other contexts," the Court noted, "the threshold for such evidentiary sufficiency is not high." *Id.* Substantial evidence is "'more than a mere scintilla.' . . . It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consolidated Edison*, 305 U.S. at 229).

Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). Given this standard, and because a reviewing court may not substitute its judgment for that of the ALJ, "challenges to the sufficiency of the evidence rarely succeed." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

Additionally, the ALJ is expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

**ANALYSIS**

**A.      State Agency Psychological Consultant Opinions**

Appel contends that the ALJ erred in his assessment of the state agency psychological consultants' opinions. In particular, Appel asserts that the ALJ disregarded the findings of the two

5

state agency psychological consultants and that his finding that she only has mild limitations in concentration, persistence, and pace (CPP) is unsupported by the record. Appel also claims the ALJ failed to address the findings when determining her RFC.

State agency psychological consultants Dr. Roger Rattan and Dr. Thomas Yared both found that Appel has moderate limitations in her ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; and the ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 121–22, 146. Both wrote in the narrative portion of their reports that Appel is able to understand, remember, and carry out simple instructions and get along with coworkers and supervisors adequately, and that, although she has "some problems with concentration and attention," she will "perform adequately in a routine manner." R. 122, 147.

At the administrative hearing, the ALJ asked Appel to discuss her medical conditions, starting first with the condition she believes is most disabling, followed by the second most disabling, and continuing in that manner until all of her medical conditions that she believes cause her to be disabled have been addressed. R. 77. After discussing the physical conditions that she believes cause her to be disabled, the ALJ and Appel discussed her mental restrictions—the final conditions she identified at the hearing:

ALJ: So are there any other medical conditions that you have, that you believe make you disabled and unable to work?

Appel: No. I think we've got it. I do take anxiety and depression medication but I don't feel that that's a big issue.

> ALJ: Okay. So you don't believe that those seem to limit your ability to work.
>
> Appel: No, not so much as long as I stay on my medication.

R. 86.

At Steps 2 and 3 of his decision, the ALJ found, based on Appel's testimony, that she had only mild limitations in the four areas of mental functioning, despite the findings of the state agency psychological consultants that she has moderate limitations in CPP. The ALJ explained,

> The claimant testified that her mental impairments do not cause any significant limitations, which is consistent with the medical record's documentation of minimal treatment. The State agency psychological consultants found the claimant has moderate limitations in her ability to maintain concentration, persistence, or pace . . . , but the undersigned concludes that the claimant's testimony indicates she has no more than mild limitation in any area of mental functioning.

R. 50. The ALJ did not address or discuss either state agency consultant's opinion when he determined Appel's RFC in his decision. *See* R. 51–53.

Although the ALJ did not expressly assign weights to the opinions of the state agency psychological consultants, the ALJ provided an adequate explanation as to why he concluded that Appel did not have more than a mild limitation in any area of mental functioning. An ALJ must only "'minimally articulate his or her justification for rejecting or accepting specific evidence of a disability.'" *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (quoting *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)). Here, the ALJ articulated the reason he did not agree with the findings of the state agency psychologists—Appel's own testimony at the hearing. When asked about whether her anxiety and depression limit her ability to work Appel stated, "No, not so much as long as I stay on my medication." R. 86. Since Appel admitted that her mental conditions do not limit her ability to work, there is not a need for the ALJ to consider any limitations related to those

conditions in the RFC. Although the ALJ did not assign a specific weight to the opinions of the state agency psychological consultants, the ALJ complied with the intention of Social Security Ruling (SSR) 96-6p, which is to ensure that an ALJ "consider and evaluate any assessment of the individual's RFC." 1996 WL 374180, at *4. Consequently, the ALJ did not err in not affording weights to the state agency psychological consultants' opinions.

B.      **Interpretation of New Medical Evidence**

Appel also argues that the ALJ's decision is flawed because the ALJ impermissibly "played doctor" by interpreting certain imaging studies without obtaining an opinion of an expert. The state agency physicians issued their opinions on August 11, 2014, and April 27, 2015. R. 121, 141. After those opinions were issued, Appel had multiple MRIs and x-rays. A July 18, 2016 x-ray revealed posterior spondylolisthesis of C4 upon C5, narrowing disc space, and facet degenerative changes. It also showed no acute ossesous lesions, normal atlantoaxial relationship, and normal soft tissue. R. 760. A November 4, 2016 MRI revealed multilevel degenerative disc disease at C4-C5, C5-C6, and C6-C7; moderate central stenosis at C4-C5 with joint and facet hypertrophy; and moderal central stenosis at C5-C6 without neural foraminal narrowing. R. 582–83. A March 3, 2017 EMG showed evidence of mild to moderate bilateral median neuropathy at the wrists and no evidence of cervical radiculopathy. R. 999–1000. An MRI taken that same day revealed multilevel degenerative disc disease at C4-C5, C5-C6, and C6-C7; moderate central canal stenosis at C4-C5 with bilateral joint and facet hypertrophy; moderate central canal stenosis at C5-C6 without neural foraminal narrowing; and no abnormal enhancing lesions. R. 1019–20. The ALJ summarized these results and limited Appel to no more than frequent overhead reaching to account for her neck pain and subjective complaints of accompanying radicular pain. R. 52. Appel maintains that the ALJ

improperly provided his own interpretation of the medical records and erred in assessing the degree of limitation that would result from Appel's carpal tunnel and degenerative disc disease.

In *Stage v. Colvin*, the Seventh Circuit found that the ALJ erred in accepting a state agency physician's opinion where the physician did not have access to later medical evidence containing "significant, new, and potentially decisive findings" that could "reasonably change the reviewing physician's opinion." 812 F.3d 1121, 1125 (7th Cir. 2016); *see also Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018) ("An ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion."); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (remanding after ALJ failed to submit MRI to medical scrutiny). More recently, in *Akin v. Berryhill*, the Seventh Circuit concluded the ALJ should not have credited the state agency physician opinions because the physicians did not review 70 pages of medical records submitted after their assessments. 887 F.3d 314, 317 (7th Cir. 2018). The court found that the ALJ erred further by impermissibly evaluating MRI results that had not been interpreted by a physician. *Id.* The court explained that

> without an expert opinion interpreting the MRI results in the record, the ALJ was not qualified to conclude that the MRI results were "consistent" with his assessment. The MRI results may corroborate Akin's complaints, or they may lend support to the ALJ's original interpretation, but either way the ALJ was not qualified to make his own determination without the benefit of an expert opinion.

*Id.* at 317–18 (internal citations omitted). The court therefore remanded the case to the Agency. *Id.* at 318.

The court recognizes the difficulties the ALJ and the Agency face in ensuring a state agency physician reviews the claimant's medical record in its entirety before completing an assessment. A hearing with an ALJ is scheduled after the state agency physicians reach an opinion on the

claimant's limitations and after the claimant's application is denied initially and upon reconsideration. In most cases, the claimant continues to receive treatment up to, and even after, the date of the administrative hearing. If the rule were that all new records required further review by the state agency consultants, the ALJ would be required to obtain supplemental opinions in every case, which would be impractical. In light of the law in this circuit, however, the court concludes that the ALJ erred in relying on the state agency physicians' outdated assessments. Much like the ALJ in *Akin*, the ALJ here improperly credited the opinions of the state agency physicians that did not review the results of the imaging studies related to her degenerative disc disease and carpal tunnel syndrome that later became part of the record. By failing to seek an updated medical opinion, the ALJ impermissibly "played doctor" by interpreting the more recent medical records, which contained new developments that could have reasonably changed the state agency consultants' opinions and required greater restrictions in Appel's RFC. Accordingly, the ALJ's failure to obtain an updated medical opinion in light of the new medical evidence constitutes reversible error.

## CONCLUSION

For the foregoing reasons, the decision of the Commissioner is **REVERSED** and **REMANDED** to the SSA pursuant to 42 U.S.C. § 405(g) (sentence four) for further proceedings consistent herewith. The Clerk is directed to enter judgment forthwith.

**SO ORDERED** this   18th   day of September, 2019.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court